DETROIT UNITED RY. v. WEINTROBE.

(Circuit Court of Appeals, Sixth Circuit. February 5, 1919.)

No. 3191.

1. RAILROADS ⟨⟩350(28)—INJURIES AT CROSSING—CONTRIBUTORY NEGLIGENCE.
    Where drivers approached double-track interurban railway, and, though warning bell at crossing for south-bound cars was ringing, and a south-bound car was in sight, bell for north-bound cars was not ringing, so that drivers, thinking that the gestures of the motorman of the south-bound car, intended to warn them of a north-bound car, were meant as commands to cross quickly, did so, and were struck by the north-bound car, whether they were guilty of contributory negligence in having failed to look carefully for it was a jury question.

2. TRIAL ⟨⟩251(8)—INSTRUCTION—SUPPORT BY PLEADINGS.
    In an action against an interurban railroad for deaths at its crossing, instruction held not erroneous as submitting the theory of last clear chance not pleaded.

3. APPEAL AND ERROR ⟨⟩1050(1)—HARMLESS ERROR—EVIDENCE.
    In an action against a railroad for deaths at a crossing, any technical inadmissibility of records purporting to show the rate of earnings of one

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

decedent where he had been employed *held* harmless to the railroad, decedent having been a young and able-bodied man without dispute, while the records only purported to show he had been earning 30 cents an hour.

**4. DEATH ☞1—PRESUMPTIONS—CONTINUANCE OF LIFE.**

There is a presumption, when persons are proved to have been living, that the same state of things as to their life continues, at least for a relatively short space of time.

**5. DEATH ☞6—ACTION—BURDEN TO DISPROVE EXISTENCE OF BENEFICIARIES.**

In an action for death, the burden is on defendant to show that decedent's wife and children in a foreign country swept over by advancing and retreating armies were dead at the time of suit.

**6. TRIAL ☞260(1)—INSTRUCTIONS—REPETITION.**

Requests to charge, covered by the general charge so far as they were proper, were properly refused.

In Error to the District Court of the United States for the Southern Division of the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action at law by Max Weintrobe, administrator of the estate of Ruben Gorwitz, against the Detroit United Railway. Judgment for plaintiff, and defendant brings error. Affirmed.

Benjamin S. Pagel, of Detroit, Mich., for plaintiff in error.
George E. Brand, of Detroit, Mich., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. Ruben Gorwitz and Ben Kuidd were driving a fruit peddler's wagon easterly on Ten Mile road, and were about to cross the double north and south bound tracks of the interurban railroad, as they lay along the extension of Woodward avenue, several miles north of Detroit. About 500 feet north of the Ten Mile road crossing, the railroad tracks, curving northeastwardly, leave Woodward avenue and follow Washington street, in the edge of the village of Royal Oak. To the south, as these men came close to the tracks, there was a view for 1,250 feet. Kuidd's brother, Abe Kuidd, walked ahead of them across the tracks and signaled them to come on. As they approached the tracks, their attention was drawn to a south-bound car which came around the curve from Washington street. With this car there was apparent danger of collision; but the motorman began to slow down, signaled with his hand to the wagon drivers, and repeatedly sounded his alarm whistle. He intended thereby to warn them against the approaching north-bound car; but, taking it as a notice to hurry across out of the way, the drivers did so, and, entering upon the second track, were struck by the north-bound car. Both were killed. The administrator of Gorwitz brought this suit, and recovered the judgment against which this writ of error is prosecuted.

A review of the record convinces us that there was evidence tending to show negligence on the part of the defendant, and that the jury had some sufficient basis for concluding that the north-bound car

was running at a dangerously excessive speed, and that it did not give those warnings of its approach which due care required. A recital of details leading to this conclusion would serve no useful purpose.

[1] The circumstances go far to indicate contributory negligence by the wagon drivers. As against the presumption that they took some precautions as to the north-bound car before they began crossing, and as against the claim that Abe Kuidd, walking ahead, looked to the south at the proper time for looking and saw no car, is the physical fact that the car must have been in plain sight of any one who looked to the south just before they drove upon the north-bound track. Whether the necessary effect of the conceded physical facts would be to demonstrate contributory negligence, except for the considerations about to be mentioned, we think it unnecessary to decide, because there are additional circumstances which made the question clearly one for the jury—accepting the evidence, as we must, in the light most favorable to plaintiff. At this point the railroad maintained automatic electric warning bells, so installed and arranged that they would begin to ring when an approaching car was 1,000 feet away and continue to ring until the car was past. In the apparent purpose to make one bell serve both for the Washington avenue curve and for the Ten Mile road corner, the installation was between these two points. There was a separate bell for each track. The bell which gave warning of a north-bound car approaching was upon a post about 200 feet north of the Ten Mile road crossing, while the one operated by the south-bound car was about 150 feet further and north of the beginning of the Washington avenue curve. The north-bound bell was out of order. It had been in this condition long enough to charge the railroad company with notice thereof. At the time of and just before this accident, the south-bound bell was ringing and the north-bound bell was not. If, then, the case may be considered with reference to the north-bound bell alone, it presents a situation where a warning bell, provided and customarily operated by the railroad company, is silent as the traveler approaches the crossing; and its silence is therefore an indication that no train is approaching, and in the nature of an invitation to cross; and this situation operates, as does an open gate or an absent flagman, to minimize the otherwise more imperative duty of looking and listening, and to make the issue of contributory negligence one of disputable inference. We have applied this rule with reference to gates and flagmen, we see no reason why it does not apply to warning bells, and it has been so held. Erie R. R. Co. v. Weber (C. C. A. 6) 207 Fed. 293, 296, 125 C. C. A. 37; Zimmerman v. Pennsylvania Co. (C. C. A. 6) 252 Fed. 571, 572, 164 C. C. A. 487; Tobias v. Mich. Cent. Co., 103 Mich. 330, 61 N. W. 514.

The result to be otherwise reached is not changed by the fact that there were two bells here and that one of them was ringing. It may be conceded that if it had not been for the approaching south-bound car, apparently explaining and satisfying the warning given by the ringing bell, the fact that it was sounding would have required the drivers to look carefully in both directions. It may even be con-

ceded that if they had been strangers to the situation, the sound of a warning bell would have made it their duty to find out what it meant; but these concessions will not necessarily cover the case. These men had made this crossing three times a week every week for a considerable time, and it was entirely permissible for the jury to infer that they were familiar with the respective situations of the two bells, knew what each was for, and knew and realized that the north-bound bell was not ringing. When, to the effect of what was indicated by the silent bell, we add the concentration of their attention to the north and the distraction of their attention from the south, naturally caused by the well-meant, but unfortunate, alarm whistles from the south-bound car, we are well satisfied that the jury had the right to find the drivers free from contributing fault, in spite of their failure to look to the south, after looking would have shown them the coming car, and before it was too late.

[2] By an offer of amendment to the declaration, plaintiff undertook to allege negligence by the motorman, in that, after he had seen the drivers in a place of danger, or should have seen them, he did not use reasonable effort to stop. This was treated as an effort to rely upon the doctrine of the "last clear chance," and the motion to amend was refused. Defendant insists that, in spite of this refusal, the court submitted this theory to the jury and that recovery may be based upon this theory. We do not so interpret the charge. We think the charge in question clearly refers to that negligence which was alleged in the declaration, and which consisted in failing to keep a reasonably prudent lookout, so as to give the necessary warning and take the necessary precautions, if any one did come into the danger zone.

[3] The court received in evidence certain records purporting to show Gorwitz's rate of earnings where he was employed. Error is assigned because these records were not properly proved. Whatever their technical admissibility might be, there was no prejudice. Gorwitz was, without dispute, a young and able-bodied man, and these records only purported to show that he had been earning 30 cents per hour. This was in 1914. There could be no substantial harm from such proof.

[4, 5] Testimony was received as to Gorwitz's wife and children. The witnesses had known them in Russia, where they had remained when Gorwitz came to this country. No one had heard of them or from them for a considerable time—perhaps two years. The country where they had been living had been swept over by the advancing and retreating Russian and German armies more than once. In this situation, it was suggested that there was no sufficient evidence of the existence of a wife and children to justify a verdict for their benefit. We think this position not tenable. When persons are proved to have been living, there is a presumption that the same state of things, as to their life, continues at least for the short space of time here involved. It is more than possible that they were all dead before the time of the trial; but the burden was upon the defendant to show this. Chamberlayne on Evidence, § 1042.

[6] The requests to charge which were not given were covered

by the general charge, so far as they were proper, well enough so that we can find no error in their refusal. Other questions presented, of evidence or of instructions, we have examined, but think they do not require comment.

The judgment must be affirmed.