The Chicago and Alton Railroad Company

*v.*

Elizabeth Blaul.

*Opinion filed October 24, 1898.*

1. Railroads—*it is the crossing flagman's duty to give warning of approach of trains.* It is the duty of a crossing flagman to know of the approach of trains, and to give timely warning thereof to all persons attempting to cross the track.

2. Same—*one may presume that crossing flagman will perform his duty.* One who knows that a flagman is employed by a railroad company at a certain crossing may presume that he will be at his post and warn him of the approach of trains, and is justified in proceeding to cross the track in the absence of the watchman, although his view in one direction is partially obstructed.

*Chicago and Alton Railroad Co.* v. *Blaul,* 70 Ill. App. 518, affirmed.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. Dorrance Dibell, Judge, presiding.

George S. House, for appellant.

Donahoe & McNaughton, for appellee.

Per Curiam: The Appellate Court, speaking through Mr. Justice Crabtree, in deciding this case delivered the following opinion:

"This was an action on the case, brought by appellee, to recover damages for injuries sustained by her in consequence of a collision with one of appellant's trains of cars, which came in contact with a buggy in which appellee was riding, at the intersection of appellant's railway tracks with Fifth avenue, in the city of Joliet. There was a trial by jury, resulting in a verdict and judgment for appellee for $5000. This court is asked to reverse the judgment upon the sole ground that the evidence does not show appellee was in the exercise of ordinary care for

her own safety at the time of the accident which caused her injury.

"It appears from the evidence that on December 8, 1894, appellee left her home in Chicago, in company with her husband and infant child, and proceeded to Joliet over appellant's railroad. On arriving at the station in Joliet the party were met there by appellee's brother, Dennis VanGarvin, and one William Smith, who had in waiting a light spring wagon, for the purpose of conveying the visitors to VanGarvin's home, about two miles south-east from Joliet. Appellant's railway at Joliet crosses Fifth avenue nearly at right angles, and at the street crossing it has three tracks, the easterly track being the south-bound main, the one next west the north-bound main, and the westerly track being what is known as a side-track. When the party started for VanGarvin's home there were seated in the light wagon, Van-Garvin and Smith upon the front seat, the former sitting on the right-hand side and driving, while the rear seat was occupied by appellee, with her babe in her arms, and her husband sitting beside her, and a small boy sat in the wagon box behind the rear seat. Proceeding in this manner easterly along Fifth avenue the party came to the right of way of appellant's railroad, and as they reached that point a long freight train, consisting of about forty box cars, was then being drawn over the Fifth avenue crossing in a northerly direction, along the north-bound main track. VanGarvin, who was still driving, brought his horse to a standstill and waited for this freight train to pull across the street, and about the time the caboose or rear car reached the north sidewalk, seeing nothing to prevent his going forward, and there being no gates closed or flagman at the crossing to give notice or warning of danger, he started his horse toward home, when, just as he reached the easterly or south-bound main track and was in the act of crossing, a train, consisting of an engine and seven or eight flat cars, bore down upon them at

a rapid rate of speed from the north, striking the wagon in which appellee was riding, throwing the occupants of the vehicle a distance of some twenty or twenty-five feet and inflicting upon the person of appellee serious injuries.

"It is frankly admitted by counsel for appellant that under the ordinances of the city of Joliet it was the duty of appellant to have a flagman at the crossing, and that one is usually on duty there, but that at the particular time of this accident he had left his post on some other business and was then absent from his place of duty, and counsel concedes that this was negligence on the part of appellant; but he contends that, notwithstanding this negligence of appellant, appellee cannot recover, because she had committed her safety to VanGarvin, the driver of the vehicle, and that the latter was guilty of negligence in not ascertaining that the east track was safe to cross before attempting to pass over it; that, inasmuch as the view was obstructed to some extent by the freight train upon the north-bound main track, he should have waited until he could know with certainty that it was safe for him to cross. It is argued that because VanGarvin knew there was usually a flagman at the crossing he should have waited until notified by the flagman that it was safe to cross. Counsel says in his argument: 'He (VanGarvin) knew that at this crossing there was stationed a flagman, whose duty it was to notify persons riding in vehicles when it was safe to cross.' But we think this is a misapprehension of the duty of a flagman under the ordinance put in evidence, and is not according to the general understanding of the public nor the almost universal custom of flagmen on such duty. It is only when there is danger, caused by the approach of trains, that the flagman displays any signal or gives any notice to the traveling public. When it is safe to cross the flagman does nothing, as a general rule, but when there is danger he gives notice, or should do so. This being the almost universal custom, we think VanGarvin, knowing that a

flagman was usually stationed at this crossing, had a right to rely on the presumption that he was at his post and would do his duty, and that in the absence of any warning or signal of danger he was not chargeable with negligence in proceeding to cross the tracks. Had the flagman been at his post and given the danger signal the accident would not have happened. While appellee's party were waiting for this freight train to go by, other teams had gathered there also waiting to cross, and all seem to have started forward about the same time, the crossing appearing to be clear and none of them apprehending danger. They no doubt relied upon the presumption that the flagman was at his post and would do his duty, warning them of danger if it existed. This presumption they had the right to indulge and to act upon. 'The flagman's duty is to know of the approach of trains and to give timely warning to all persons attempting to cross the railroad track, and the public have a right to rely upon a reasonable performance of that duty.' *Chicago, St. Louis and Pittsburg Railroad Co.* v. *Hutchinson,* 120 Ill. 587.

"Fifth avenue was a largely traveled thoroughfare, and it was the duty of appellant to keep a flagman in constant attendance there. In his absence, to run a train over the crossing at a dangerous rate of speed was great negligence, and rendered appellant clearly liable for injury resulting therefrom to any one in the exercise of ordinary care for his or her own safety. Whether appellee was in the exercise of such care at the time of the accident was a question of fact for the jury, and we cannot say their finding on that point was wrong. On the contrary, we think it was fully justified by the evidence, and we cannot reverse the judgment upon that ground.

"It is claimed that the damages are excessive, but we cannot say that the jury were not warranted in finding the amount they have awarded. From the evidence the jury had a right to believe that appellee has sustained

an injury to the spinal cord, from which she is in danger of permanent paralysis, and if so, certainly the damages are not excessive. We do not need the testimony of expert physicians to tell us that injuries of the character received by appellee frequently do result in paralysis. The extent of the injury may not be at once apparent, but the result may be a total wreck of the entire system. The jury heard the testimony of the witnesses and the opinions of the medical experts who had examined appellee, and they saw and had the opportunity of observing her for themselves, and we are not disposed to substitute our judgment for theirs under all the circumstances of the case.

"No complaint whatever is made of the instructions, and finding no error in the record the judgment will be affirmed."

We adopt the foregoing opinion as that of this court, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*