BROGDEN, J., dissenting.
The complaint of plaintiff in Keller v. Railway Co., is as follows:
"For a first cause of action, the plaintiff, complaining of the defendant, says:
1. That the defendant is a corporation created and existing under the laws of the State of Virginia, and as such is authorized to do business in the county and state aforesaid as a common carrier of freight and passengers for hire.
2. That plaintiff is a citizen and resident of the county of Madison, State of North Carolina.
3. That at the time hereinafter mentioned the defendant as such daily operated approximately twenty-five trains over its track laid through the town of Hot Springs.
4. That defendant's said track runs east and west alongside the main street of said town and close to and on the south side of defendant's depot, which depot is located in the very heart of the business section of said town.
5. That a public highway leading from North Carolina into Tennessee and the west crosses defendant's said track in a southward direction from the French Board River, and is flanked immediately on the west by the defendant's depot, and immediately on the east by defendant's building known as the supervisor's house, both the said depot and supervisor's house being on the north side of defendant's track, and so close thereto as to barely admit of the passage of defendant's train; that the public highway is very narrow and passes between said depot and supervisor's house immediately before one crosses said tracks traveling south on said highway.
6. That the defendant's track from the east end of said depot westwardly is so completely hidden from view by said depot and by trees and shrubbery that at no time in approaching said crossing and traveling upon said highway from said river can the driver of an automobile see said track to the west of the east end of said depot, or see trains approaching said crossing from a westerly direction until after his automobile enters upon defendant's track at said crossing.
7. That owing to the obstruction of one's view by said depot, supervisor's house, trees and shrubbery, the said crossing to one traveling south is a blind and dangerous crossing.
8. That the town of Hot Springs numbers many hundred of inhabitants and is a trade center for the entire surrounding country, while said highway not only carries the local pedestrian and vehicular traffic of a populous community, but is also the main artery of travel from Tennessee and all points west, and as a consequence many hundreds of pedestrians and automobiles are constantly crossing the defendant's track at said crossing, and defendant operates daily over its said track *Page 271 
approximately twenty-five trains — all of which was and is well known to defendant, and rendered it imperative that defendant in the exercise of ordinary care use great precaution to prevent injury to persons crossing its said track at said crossing.
9. That there are in common and general use by defendant and all other railways for the protection of persons crossing railway tracks at such dangerous crossing, gates with watchmen, or gongs to warn persons of the approach of trains; yet the defendant negligently and carelessly failed to provide either gongs or gates with watchmen at said crossing, when the defendant knew or should have known that such precautions were reasonably necessary to protect the traveling public against injury at said blind crossing.
10. That although defendant's own buildings obstructed and rendered said crossing extremely hazardous and dangerous to the hundreds of pedestrians and automobiles daily passing over the same, the defendant negligently and carelessly failed to provide gates and watchmen, or gongs thereat to warn such pedestrians and automobiles of the approach of the defendant's numerous trains daily passing over defendant's said track and crossing, and instead installed and maintained at said crossing a red and green light electrical signaling system, which system was defective, dangerous, unsafe, misleading, and made of said crossing a veritable death trap in that:
First: The red and green lights on the north side of said track were defectively hooded and placed so as to admit and cause the sun's ray to shine directly against the glass of said signals, and thus to render it difficult to ascertain whether the signals were showing `red' or `green.'
Second: The hood and lighting device of said red and green signals were defective in that they did not darken the red glass when the green was showing and vice versa.
Third: The mechanism of said signaling system was negligently permitted by defendant to become and remain out of repair, defective and dangerous for a long time immediately prior to, as well as at the time of the injuries hereinafter mentioned, so that at said times the green signal showed `green' at all times when defendant's trains were approaching and traversing said crossing, instead of showing `red' when trains were approaching said crossing, as would have been the case had said system and the mechanism thereof been in good repair and working order.
11. That defendant also negligently and carelessly failed to properly inspect and supervise said signaling system so as to keep the same in repair and good working order at all times, because it knew, or should have known, that its failure so to do would likely result in injury to persons and automobiles upon said crossing. *Page 272 
12. That on 3 May, 1932, the plaintiff, driving his truck southward along said public highway, approached said crossing in a lawful and cautious manner, looking and listening and carefully observing the signal light on the north side of defendant's track and perceiving the same to be showing `green' which indicated that no trains were approaching, and hearing no warning signal by any bell, whistle or otherwise by any train, entered upon said track, when one of defendant's trains proceeding from a westerly direction at a high, negligent, reckless, dangerous and terrific rate of speed dashed against plaintiff's automobile hurling the same violently against the iron signal post of the south side of said track, completely demolishing plaintiff's truck and killing plaintiff's father and one Terrell Ricker, who were also occupants of said truck, and seriously and permanently injuring plaintiff, as will hereinafter more fully appear.
13. That the plaintiff was actively induced by said defendant's `green' signal to drive upon its track at said crossing, and was prevented from seeing said approaching train by reason of said trees, shrubbery and defendant's said buildings negligently maintained by defendant so as to obstruct one's view in approaching from said river and entering upon defendant's track.
14. That defendant's engineer, fireman, and other agents, servants and vice-principals in charge of and operating said train at the time of striking plaintiff's truck not only negligently operated the same at said high rate of speed, and without sounding any bell, whistle, or other signal at any time upon approaching said crossing, but also negligently failed to keep a proper lookout ahead, and to so operate said train as to control, promptly slacken the speed of, or to stop same in case of an emergency.
15. That had defendant's said agents, servants and vice-principals operated said train at a reasonable rate of speed, and have had same under proper control, and have kept a proper lookout ahead they could and should have stopped, or at least have slackened the speed thereof, after plaintiff was induced to enter upon said track as aforesaid, so as to have averted demolishing said truck and injuring the plaintiff and other occupants thereof.
16. That plaintiff's truck was struck by defendant's train by reason of defendant's and defendant's agents' said acts of negligence, and as a consequence thereof plaintiff received serious and permanent lacerations, contusions, disfigurements and injuries to his face, head, scalp, neck, shoulders, body, limbs, spine, internal organs and nervous system, lost large quantities of blood, was committed to a hospital where his wounds were stitched and where for many days he underwent painful treatment of his said injuries, was compelled to incur much expense in the treatment *Page 273 
of said injuries, and for doctor's bills, medicines, and hospital treatment, was left permanently sick, sore and disordered, has lost much time from his work, and is seriously and permanently incapacitated therefor, and has suffered and will continue to suffer great mental anguish and physical pain, all to his damage in the sum of $2,650.
And for a second cause of action, plaintiff says:
1. That plaintiff is a citizen and resident of said county and State.
2. That defendant is a corporation under the laws of the State of Virginia.
3. That the plaintiff adopts and incorporates as a part of this cause of action each and every allegation of the first cause of action, except paragraph No. 16.
4. That on 3 May, 1932, the plaintiff, after looking and listening and hearing no signals by any approaching train, nor seeing any train, and observing that defendant's electric light signaling system at the public highway crossing at its depot in the heart of the business section of the town of Hot Springs, county and State aforesaid, was showing `green' (which is the signal to go) and being induced by said factors to do so, entered upon defendant's track at said crossing and was in the act of crossing the same going southward when one of the defendant's trains, being operated at a high, negligent, dangerous and unlawful rate of speed by the defendant's agents and servants in charge thereat, and having sounded no signal of any kind to warn plaintiff, driving against plaintiff's said truck from the west, striking the same a terrific blow and completely demolishing, damaging and destroying said truck.
5. That plaintiff was prevented from seeing said approaching train by reason of defendant's track being obstructed by trees and shrubbery, and by defendant's buildings negligently constructed close to and maintained on either side of said highway at said crossing, although defendant knew that about twenty-five of its trains daily passed over said crossing, and also that same was daily used by hundreds of pedestrians and automobilists.
6. That defendant's signaling system was defective, dangerous, unsafe and misleading, as set out in paragraph 10 of the plaintiff's first cause of action.
7. That had defendant's agents and vice-principals operated its said train at a reasonable rate of speed, have given timely signals, and kept a proper lookout ahead, they could have discovered plaintiff's perilous position on said track and could have stopped or slackened the speed of said train and thus have averted the destruction of the plaintiff's said truck, but instead negligently failed to do so.
8. That plaintiff's said truck was destroyed by defendant's said negligence and was of the reasonable market value of $350.00. *Page 274 
Wherefore, plaintiff prays judgment under his first cause of action for the sum of $2,650, and under his second cause of action for $350.00, and for the costs of the actions to be taxed by the clerk.
In answer, the defendant denied the material allegations of the complaint, set up the plea of contributory negligence, and further set up a violation of N.C. Code, 1931 (Michie, sec. 2621 (47) — (railroad warning signals must be observed) "was the direct and sole proximate cause of any injury he (plaintiff) sustained, and said conduct is specifically pleaded in bar of plaintiff's right to recover herein."
The defendant further says "That at the time of said accident said lights were in perfect condition and that as the plaintiff approached said crossing said signal light was red, which was a warning to him that said train would immediately go over the said crossing."
These matters were set up in bar of recovery.
In the companion case of Davis, Admr., v. Railway Co., the complaint and answer involved the same feature of complaint and defense, except that plaintiff alleges that "the plaintiff's intestate was an occupant or passenger of a truck being driven southward along said public highway in the direction of said crossing; that plaintiff's intestate had no control or authority over said driver or said truck," etc.
In answer defendant says: "That if the plaintiff's intestate was injured and killed, it was due:
(a) To the result of his own negligence and the negligence of his agent, companion and joint adventurer in going upon the track of the defendant in the face of the approaching train, without exercising a proper lookout and due care for his own safety.
(b) To his contributory negligence in failing to stop, look and listen for the approaching train, which was in full view until he went upon the tracks of the defendant, and in that his agent, companion and joint adventurer failed to stop, look and listen for the approaching train, and plaintiff's intestate recklessly, heedlessly and negligently allowed, permitted and acquiesced in his companion and joint adventurer, to wit, Phillip Keller, driving said automobile upon said railroad tracks, and said negligence of plaintiff's intestate and his agent and joint adventurer contributed to and proximately caused the injury and death of plaintiff's intestate, and such contributory negligence is hereby pleaded as a bar to any recovery in this action.
(c) To his contributory negligence proximately causing his injury and death in that he rode in said motor vehicle willingly and concurred or acquiesced in the reckless driving of the same by his companion.
That the driver of said automobile, Phillip Keller, was a reckless, dangerous and indifferent driver of automobiles and trucks; that plaintiff's intestate was in the habit of riding with his said son, Phillip *Page 275 
Keller, and knew and appreciated the fact that the said Phillip Keller was a reckless, dangerous and indifferent driver, and notwithstanding such knowledge on his part plaintiff's intestate on this occasion rode with the said driver, realizing at the time that to do so was dangerous, and that said driver was likely, through his negligence, to cause a serious accident at any time."
The issues submitted to the jury and their answers thereto, in the first and second cause of action, were as follows:
(1) Was the plaintiff, Phillip Keller, injured by the negligence of the defendant as alleged in the complaint? Answer: Yes.
(2) Did the plaintiff, Phillip Keller, by his own negligence contribute to the injury he sustained as alleged in the complaint? Answer: No.
(3) What damage, if any, is the plaintiff, Phillip Keller, entitled to recover of the defendant for injuries done to his person? Answer: $1,225.
(4) What damage, if any, is the plaintiff Phillip Keller, entitled to recover for damages done to his truck? Answer: $156.25."
The issues submitted to the jury and their answers thereto, in the second action, were as follows:
(1) Was A. J. Keller, deceased, killed by the negligence of the defendant, as alleged in the complaint? Answer: Yes.
(2) What damage, if any, is W. T. Davis, administrator of A. J. Keller, entitled to recover of the defendant, Southern Railway Company? Answer: $750.00.
The court below rendered judgments on the verdicts. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.
These are actions for actionable negligence alleging damages. The plaintiff, Phillip Keller, instituted this action in the Superior Court of Madison County, against the Southern Railway Company, on 19 July, 1932, and filed his complaint, alleging two causes of action. In his first cause of action he alleges that he was operating an automobile truck and drove upon the track of the defendant, Southern Railway Company, in the town of Hot Springs, and was struck and injured, and demands judgment in the sum of $2,650. In his second cause of action he alleges that his truck was demolished by reason of the impact set forth in his first cause of action, and that he sustained damages in the sum of $350.00 to his truck. *Page 276 
On the same date W. T. Davis, administrator of the estate of A. J. Keller, deceased, instituted an action in the Superior Court of Madison County against the Southern Railway Company, and filed his complaint on said date, alleging that A. J. Keller, an old man 75 years of age, was a passenger in the automobile driven by Phillip Keller, the owner of the truck, and that plaintiff's intestate was killed in said collision, and judgment was demanded in the sum of $3,000.
In both actions, all the issues were found in favor of the plaintiffs, and judgments rendered on the verdicts in favor of the plaintiffs.
At the close of plaintiffs' evidence and at the close of all the evidence, the defendant made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions and in this we can see no error. It is a well settled rule that upon a motion as of nonsuit the evidence, whether offered by the plaintiff or elicited from defendant's witnesses, is to be considered in the light most favorable to the plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference to be drawn therefrom. We set forth the complaint in full, without going into a lengthy detail of the evidence, as we think the evidence on the material allegations in the complaint sufficient to have been submitted to the jury. There is a discrepancy between the complaint and evidence as to the course of the highway and railroad. In the opinion we will treat the highway as running east and west and railroad north and south. Phillip Keller, the plaintiff, lived about 3 miles from Hot Springs, N.C. and on the morning of 3 May, 1932, between 7 and 8 o'clock, was on his way to Greenville, Tenn., driving a 1930 "A" model Ford truck. It had been a coupe and had been changed into a light delivery truck, which he ordinarily used for hauling wood. He was at the wheel, and next to him was his father, A. J. Keller, and sitting next to his father was Terrell Ricker. He was driving west through Hot Springs on a hard-surfaced State highway, "the main artery east and west." The village had a population (1930 census) of 725.
The defendant's railroad track, which runs north and south, crosses this highway. Each day 100 to 500 cars and 400 to 500 pedestrians cross the defendant's track on this highway. On each side of the track defendant has a signal post with a red warning light, with the word "Stop" and a green light with the word "Go." Defendant ran about 25 trains over this track a day. Approaching the defendant's track, going west, the highway goes up a slight incline until it reaches the defendant's track, and it is level and then a decline downward. The view of a traveler on the highway going west is obstructed by defendant's depot, trees and shrubbery, in seeing a train going north on defendant's track, until very near the track. *Page 277 
Plaintiff testified, in part: "I was going west, going to Tennessee, as I drove towards the track; the light was green, it said "Go" and I drove upon the track slowly, was making 6 or 8 miles an hour. I was on the mountain side, the right-hand side of the highway, and just as we got up there, we were going on the track, and the train came up at a rapid speed, must have been making about 30 miles an hour; it hit us and knocked us over against the signal post. . . . That crossing is right there at the main public square of the town, and as I was going up to the crossing to cross the crossing there you go between buildings, on both sides it is a close space. I was going towards Tennessee; you can't see a train coming until you are right on the track. . . . It may be 16 feet from the railroad back to the depot. . . . The shrubbery keeps you blinded from seeing the train until you get to the depot, and that garage and you can't see at all until you enter right on the track. . . . Just shrubbery and trees. . . . In the complaint, I alleged, `that the green light, as I came to the track, with a defective hood, so as to cause the sun's rays to shine against the glass of the said signal rendered it difficult to tell whether the signal was showing red or green.' . . . I know I drove up there and the light showed to be green, looked green to me; well, it was a green light. I could tell them apart that morning and the light showed green. It was not hard to tell whether it was a green or a red light that morning when I drove up there. . . . I know the green light was the only one I could see that was burning bright at that time. . . . The light shined against both and showed against them both and that was because they were poorly hooded, and that is true, and when I told him the sun was shining against those two lights, making it hard to tell which was the green or red, I told him the truth, and I told him that was the condition the day I went on there, on the morning I drove up there the light did show green then. . . . You could always see both lights if the sun was shining, but the green light showed plain that morning. The red light when you see `stop' that says stop, and if `go' it is on the green light, you drive on, and I saw `go' on the green light and drove on. . . . I cut the gas off and it rolled up on the track. I got the four wheels on the track and saw the train coming and I then socked the gas on it; when I saw the train I was going about from 4 to 8 miles; it had just been a short distance behind that I cut the gas off, I cut the gas off about 25 or 30 feet back of that, but I was driving slow coming up there. . . . I put the gas to it to get across and, it hit the back end; from the time I saw the train 30 feet from me, until it hit me, I went about half the distance of the car, and my car was 8 to 10 feet. I will say I drove 8 feet, while the train drove 20, but I saw it was all the way I could do. . . . I just let up on the *Page 278 
gas as I started upon the tracks; my engine was running; I just took my foot off the gas and eased up on the tracks. As you approach that building, and as you approach the front of it, you can't see any of the track until you get in front of the depot."
The evidence on the part of plaintiff was to the effect that plaintiff, Phillip Keller, and his witnesses, heard no whistle blow or bell ring.
In Harris v. R. R., 199 N.C. 798 (799), is the following: "The law in this State does not impose upon the driver of a motor vehicle, on his approach to a public crossing, the duty, under all circumstances, to stop his vehicle before driving on the crossing. Whether under all the circumstances, as the evidence tends to show, and as the jury may find from the evidence, the failure of the driver to stop, as well as to look and listen for an approaching train at a railroad crossing, was negligence on his part, is ordinarily a question involving matters of fact as well as of law, and must be determined by the jury under proper instructions from the court." N.C. Code of 1931 (Michie), section 2621(48); Moseley v. R. R.,197 N.C. 628; Butner v. R. R., 199 N.C. 695; Madrin v. R. R., 200 N.C. 784,S. c., 203 N.C. 245; Campbell v. R. R., 201 N.C. 102; Sandersv. R. R., 201 N.C. 672; Baker v. R. R., 202 N.C. 478; Dancy v. R. R.,204 N.C. 303.
Plaintiff testified: "I was going west, going to Tennessee, as I drove towards the track; the light was green, it said to `Go' and I drove upon the track slowly, was making 6 or 8 miles an hour," etc. The light being green and saying "Go," plaintiff had a right to presume that it was an assurance of safety and that the crossing was clear, and to act with reasonable caution, such as an ordinarily prudent man would use under like circumstances, and drive on the crossing. Barber v. R. R., 193 N.C. 691;Finch v. R. R., 195 N.C. 190 (199); Moseley v. R. R., supra, at p. 635.
The defendant contends that in reference to A. J. Keller, who was a passenger in the automobile, it was entitled to an issue of contributory negligence. We cannot so hold. A. J. Keller was in the automobile and the father of the driver, Phillip Keller, who testified: "My father did not own any interest in that car; he had no control over my driving that car, and did not attempt to exercise any control over my driving that car. I certainly knew how to operate the automobile properly."
In Campbell v. R. R., 201 N.C. 102 (107), it is said: "Plaintiff was a guest or gratuitous passenger. It is well settled that `negligence on the part of the driver will not, ordinarily, be imputed to a guest or occupant of an automobile unless such guest or occupant is the owner of the car or has some kind of control of the driver. Bagwell v. R. R., 167 N.C. 611;White v. Realty Co., 182 N.C. 536; Williams v. R. R., 187 N.C. 348;Albritton v. Hill, 190 N.C. 429. Of course, if the *Page 279 
negligence of the driver is the sole, only proximate cause of the injury, the injured party could not recover.' Earwood v. R. R., 192 N.C. at p. 30; Dickey v. R. R., 196 N.C. 726." Smith v. R. R., 200 N.C. 177 (180).
In Nash v. R. R., 202 N.C. 30 (33), we find: "Louise Nash was a gratuitous passenger or guest in the automobile driven by Sarah Adams. She was not the owner of the car and had no control of it; neither is there evidence that the deceased was engaged in a joint enterprise with the driver or other occupant of the car. Consequently, any negligence on the part of the driver would not be imputed to the deceased."
In regard to defendant's having a different light at another crossing, we do not think this prejudicial. The defendant brought out the same fact on cross-examination of one of plaintiff's witnesses. See Blum v. R. R.,187 N.C. 648. We think the court below properly refused defendant's prayers for special instructions. The charge was full, clear and gave the law applicable to the facts. In the judgment below we find
No error.