**BALTIMORE & O. R. R. v. CORBIN.**

No. 7520.

United States Court of Appeals for the District of Columbia.

Decided Dec. 9, 1940.

George E. Hamilton, John J. Hamilton, George E. Hamilton, Jr., Henry R. Gower, and Leo N. McGuire, all of Washington, D. C., for appellant.

Simon Hirshman, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The appeal is from a judgment of the District Court awarding $5,000 damages for the wrongful death of James R. Corbin in an action brought by his executrix against the Baltimore and Ohio Railroad. The judgment was rendered on the verdict of a jury.

Plaintiff's decedent was killed at 12:19 a. m., February 26, 1937, in a collision between the automobile which he was driving and defendant's train at the crossing of Bates Road, Northeast, and defendant's right of way. Defendant's train was proceeding in a southerly direction into Washington at a speed of between 65 and 70 miles per hour. The southbound tracks on which the collision occurred are on the west side of the crossing, while the northbound tracks, the only others maintained

by defendant at that point, are on the east side. Decedent approached from the east, crossed the northbound tracks, and struck the locomotive at the front. There were no eyewitnesses to the crash. The car was found completely demolished 174 feet south of the crossing and 14 feet east of the northbound tracks. Police officers who arrived at the scene about 20 minutes after the accident found that the signal flash-lights and bells, which defendant had erected on each side of the crossing to warn motorists of approaching trains, were not operating. Examination of the battery box, a solid concrete structure located 18 feet east and 12 feet south of the cross-ing, revealed that one of the 23 batteries was broken. When this battery was re-moved and the remaining batteries were connected together, the warning lights and bells resumed operation. There is undisputed testimony that the headlight of the train was burning, that the locomo-tive bell was ringing, and that its whistle was blowing from a distance of 1500 feet until the crossing was reached.

North of Bates Road and east of de-fendant's right of way is a bank 10 feet or more in height. Five witnesses testi-fied at the trial that a person approaching from the east could not see any distance up the track to the north until he came within a very few feet of the crossing. From the testimony of other witnesses, and from physical exhibits, it appears that an unobstructed view of the track to the north could be had from approximately 20 feet east of the northbound track. The decedent was familiar with the crossing.

At the close of the evidence, the trial court refused to direct a verdict for de-fendant. Among other instructions, the jury was told that if the flashlights and bells were not operating "this fact lessened plaintiff's otherwise obligation to have dis-covered in time the approaching train and that the failure of said lights and bells to operate at the time and place in question was in the nature of an invitation to cross the railroad tracks which fact the jury are entitled to consider along with the other evidence in the case as to the contributory negligence, if any, of the decedent." The defendant complains of these actions of the trial court, and also of its refusal to grant requested instruction No. 8, that if the jury "find from the evidence that the breaking of the battery jar was due to the concussion resulting from the collision be-tween the automobile and the train, then they are instructed that their verdict should be for the defendant."

The chief issue is whether the warning lights and bells were operating at the time of the accident, for it was as-sumed below and in the argument here that if the warnings were not working de-fendant's negligence was established. De-fendant relies on its evidence that the sig-nals were working to establish that dece-dent was contributorily negligent as a mat-ter of law. We think the trial court cor-rectly submitted the question to the jury. Two witnesses testified that when they passed the crossing earlier in the evening of February 25, one "between 7:30 and 8 o'clock" and the other "about 9 o'clock," the warning lights and bells were not oper-ating, although trains were on the crossing or within the signal block. Defendant sought to impeach the testimony of one of these witnesses with a prior inconsistent statement which he stated he signed with-out reading. It is undisputed that the warnings were not working after the acci-dent. Defendant's theory is that the shock of the collision transmitted through vibra-tions in the earth broke the battery, thus breaking the circuit and disabling the sys-tem. An expert witness testified for de-fendant that such a shock "could have caused" one only of the batteries to break, even though, as was clear from the evi-dence, none of the wreckage of the car struck the battery box. Two experts testi-fied for plaintiff that the concussion "could not break out the bottom of only one of the battery jars," or at least that such a result would be "remote." One of these sug-gested that the jar may have been broken either when it was refilled on February 12, or when it was inspected on February 23. He testified that the solution used in the batteries created heat which might result in breakage if the jar came in contact with a cold surface. It appears that the night of February 25 was very cold. The other expert noted that the battery box was "about 20 feet"[1] from the south-bound tracks, and separated from the point of collision by "ballast" consisting of broken stone. Several witnesses testified for plaintiff that there was very little if any moisture in the bottom of the battery box when the battery was removed after the accident. Two witnesses testified that

[1] From measurements introduced earlier in the trial it appears that the distance was 30 feet.

there was a damp spot 18 to 20 inches in diameter. The record shows that the normal content of a battery jar is one gallon. The jury reasonably might have doubted that a gallon of liquid could be reduced to a mere damp spot within the short time between the accident and the inspection of the battery box. This evidence therefore significantly supports the verdict and judgment.

The engineer and the fireman of the train testified that they saw the signal lights on the west side of the crossing operating immediately before the collision. Other employees of defendant who were on other trains which went over the crossing during the evening testified that they saw the lights on the west side of the crossing, and one testified that he saw the reflection of the lights on the east side. It was stipulated at the trial that the lights on both sides of the crossing operate in the same circuit. Therefore it is inferable, though nowhere clearly demonstrated, that if the lights on the west side were functioning at the time of the accident those facing decedent on the east side were working also.

We think that in this state of the record a clear factual issue was presented for the jury. On defendant's side was the testimony of the employees that the lights were working prior to the accident, together with the expert testimony that the battery might have been broken at the time of the accident. On plaintiff's side were: the testimony of two witnesses that the lights were not working prior to the accident; the testimony that the breakage of one battery only at the time of the accident would be "remote"; the possible inference, in view of the cause of the disorder, that the lights were out of order since the time they were first observed not to be working; the supporting testimony that there was little moisture in the bottom of the battery jar, leading to the inference that the breakage occurred earlier, giving the liquid time to evaporate. It was for the jury to decide whether the attempted impeachment of plaintiff's witness was successful, and also to decide what weight was to be given to the testimony of defendant's witnesses. We cannot say as a matter of law that they were required to accept the evidence adduced by either party.

■ The question remains whether the trial court's instructions attached the proper consequences to failure of the warning signals to operate. We are not required to consider whether failure of the signals is in itself evidence of negligence on the part of defendant, for appellant made no objection to the instructions in this respect before the jury retired. See Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. We are concerned only with the effect which failure of the lights and bells may have on the issue of decedent's contributory negligence. We think the trial court instructed correctly that "this fact lessened plaintiff's otherwise obligation to have discovered in time the approaching train." It is a well-established rule, adopted inferentially by this court [Conger v. Baltimore & Ohio R. R., 1908, 31 App.D.C. 139], that the quiescence of normally operative warning signals is an "invitation to cross," minimizing the usual duty of diligence of one passing over a railroad crossing. Detroit United Ry. v. Weintrobe, 6 Cir. 1919, 259 F. 64; Teague v. St. Louis Southwestern Ry., 5 Cir. 1929, 36 F. 2d 217; Wabash Ry. v. Walczak, 6 Cir. 1931, 49 F.2d 763; Notes, 1928, 53 A.L.R. 973; 1935, 99 A.L.R. 729. The rule is peculiarly applicable, though not exclusively so [Conger v. Baltimore & Ohio R. R., supra], where the traveler, as here, is familiar with the crossing and has come to rely on the signals to warn of approaching trains. We therefore think the jury was entitled to consider the fact of reliance on the signals together with the other evidence, largely circumstantial, in determining whether the decedent was contributorily negligent.

■ We cannot say as a matter of law that the jury was wrong in finding decedent not contributorily negligent. If, as the jury must have found, the signals were not working, decedent may have relied on them in failing to curtail his speed sufficiently in approaching the crossing to be able to avoid the accident. From the evidence as the jury might have found it there was a distance of only about 30 feet during which decedent had a view of the oncoming train. His failure to stop under these circumstances before being hit was not negligent as a matter of law. In this view it makes no difference whether the car struck the train or the train struck the car, for the collision occurred at the very front of the locomotive.

■ Defendant presents no argument to support its contention that the trial court erred in refusing to grant its requested in-

struction No. 8. We think the substance of this instruction was included in other instructions given.

The judgment is affirmed.