I. G. PREDDY, ADMINISTRATOR OF LEHMON PREDDY, DECEASED, v. J. T. BRITT AND LEGH R. POWELL, JR., AND HENRY W. ANDERSON, RECEIVERS OF SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 5 January, 1938.)

**1. Trial § 22b—**

Upon motion to nonsuit, the evidence which supports plaintiff's cause of action should be considered in the light most favorable to him, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

**2. Railroads § 9—In this action to recover for death of intestate killed in crossing accident, held: case was properly submitted to jury.**

The evidence in this case favorable to plaintiff tended to show that intestate was driving his car twelve or fifteen miles per hour at night across a grade crossing when the car was struck by a train approaching the crossing 60 miles per hour without ringing the bell or blowing the whistle, and that by reason of a curve and cut and obstructions along the track, approaching trains could not be seen from the highway until the driver of a car was within a short distance of the track. *Held:* The evidence warrants the submission of the case to the jury on the issues of

negligence and contributory negligence, whether intestate was guilty of contributory negligence in failing to stop before attempting to cross the tracks, being for the determination of the jury upon the evidence.

**3. Torts § 8a—Evidence held properly submitted to the jury on the issue of whether release was obtained by fraud.**

Evidence that the consideration for the release signed by plaintiff administrator was grossly inadequate in relation to reasonable compensation for intestate's death and was obtained by defendant's claim agent knowing the administrator's financial necessities and distress, *held* properly submitted to the jury on the issue of whether the release was obtained by fraud.

**4. Torts § 8d—**

Where a release is set aside for fraud, the consideration for the release should be deducted from the amount awarded by the jury in damages.

DEVIN, BARNHILL, and WINBORNE, JJ., dissent.

APPEAL by defendants from *Sinclair, J.,* and a jury, at September Term, 1937, of FRANKLIN. Modified and affirmed.

This is an action for actionable negligence, alleging damage. The defendants in their answer denied the material allegations of the complaint alleging actionable negligence, and set up contributory negligence and a release in the sum of $220.80 signed by the administrator in bar of the action. The release, in part, is as follows: "I now have or may hereafter have, or which my heirs, executors, administrators or assigns may hereafter have, for or by reason of all injuries and damages of whatsoever nature and the results of such injuries and damages received by the said Lehmon Preddy, deceased, on or about 29 April, 1934, at or near Franklinton, N. C. This release to cover injuries to the said Lehmon Preddy on 28 April, 1934, and the death of the said Lehmon Preddy on 29 April, 1934." The plaintiff, in reply, set up fully the allegations constituting fraud in procuring the release.

The evidence was to the effect that the defendant's railroad crossed a public State highway and ran across same about north and south. Approaching the track from the east, going west towards Franklinton, a driver of a car on the highway could not see a train approaching for some distance on account of a house and cut there. At about 16 feet from the track you could see about 100 feet; one has to look mighty close over the shoulder to see a train 50 feet from the track looking east. There is a cut 18 feet deep and high enough to cover the engine. To see an approaching train you would have to be the length of an automobile, practically on the track, to see to the south. A two-story house, about 50 yards distance, also obscures the approach of a train. A driver coming in within 15 feet has to turn his head over, has to twist his head back to see at all down the track. It is about 100 yards from

the crossing to where the cut starts. One would have to turn his head over his shoulder to see the train even at 15 feet.

Mrs. Flora Preddy, witness for plaintiff, testified: "I am the wife of Robert Preddy, who is the brother of the boy who was killed. On 28 April, 1934, I was living about 200 yards from the crossing, on the west side of the railroad track, on the Franklinton side. On that night about 8:30 I was in my back yard. While I was standing there I saw an automobile approaching the railroad track coming from the east and driving toward the west. That was the automobile that I later saw the train hit. I found out the next day that it was my brother-in-law, Lehmon Preddy. Lehmon's automobile was about 30 feet from the railroad iron when I first saw it.

"At that time one of the Seaboard trains was coming from the south. That train was about 75 yards from the crossing when I saw the automobile. It was still in the cut at that time—still in the cut while Mr. Preddy's automobile was 30 feet from the first rail. Mr. Preddy was driving his automobile about 12 or 15 miles an hour. The train was running the fastest I ever saw—about 60 or 70 miles per hour. The train did not slow down. It did not blow any whistle or ring any bell. I saw the train strike the automobile. The wreck fell on the west side. That train was running about 60 miles an hour when it hit that automobile. It slowed down afterward, but it didn't until it hit. (Cross-examination.) The automobile I saw was hit by the train, when I saw it is was running 12 or 15 miles an hour, and from the time I saw it until the train struck it it continued to run, and of course ran right in front of the train, and as it ran in front of the train the train hit it and knocked it up the track. When I saw the automobile it was about 30 feet from the crossing, and at that time the train was coming out of the cut about 75 yards away."

Charlie Burwell, witness for plaintiff, testified, in part: "On the night of 28 April, 1934, I was living near the Williams or Winfree crossing. About 8:30 that night I was in my kitchen, facing the railroad. Just before that wreck the engineer or the employees in charge of the train that struck that automobile did not blow a whistle or ring a bell. . . . I found Mr. Lehmon Preddy there. I helped pick him up and carry him to the doctor. I think they took him to the hospital that night. He died. I found him on the left-hand side, the west side of the railroad. When I picked him up he was about 15 feet from the track on the left side. A piece here and a piece there, the automobile was torn all to pieces. The wreckage was on the west side. I looked at the train after the crash. The best I can estimate it was running about 60 miles an hour. It ran down the track a quarter of a mile before it finally stopped. I held this boy's head in my lap while

carrying him to the doctor. I did not smell a drop of whiskey or alcoholic beverage on his breath."

D. C. Hicks testified, in part: "I would say it was a dangerous crossing."

Plaintiff introduced the mortuary tables as set forth in the statutes, showing an expectancy of 42.9 years.

Henry Cash testified, in part: "I have driven over it. I couldn't say how many times, but several times. You can't see down the railroad until you get mighty near on it. There's a fill down there and you have to get almost on the track before you can see down it. I have been there when a train was passing."

Defendant introduced evidence which was contrary to that of plaintiff, also photographs and survey of the situation where the collision occurred. There was evidence, pro and con, on the allegation of fraud in the release.

The issues submitted to the jury and their answers thereto were as follows:

"1. Was the execution of the release by the plaintiff procured by the fraud of the defendants as alleged in plaintiff's reply? Ans.: 'Yes.'

"2. Was the plaintiff's intestate killed by the negligence of the defendants as alleged in the complaint? Ans.: 'Yes.'

"3. Was the plaintiff's intestate guilty of contributory negligence as alleged in the answer? Ans.: 'No.'

"4. What damages, if any, is plaintiff entitled to recover of the defendants? Ans.: '$1,000.'"

The court rendered judgment for plaintiff on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and other necessary facts will be set forth in the opinion.

*E. C. Bulluck, W. L. Lumpkin, and Thos. W. Ruffin for plaintiff.*
*Murray Allen and Edward F. Griffin for defendants.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence the defendants in the court below made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions and in this we can see no error.

The evidence which makes for plaintiff's claim, or tends to support his cause of action, is to be taken in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom. We think the plaintiff's evidence fully sustains his contentions and allegations in his complaint.

Plaintiff's evidence was to the effect that the crossing was a public highway and was dangerous. That the view of the railroad train, as plaintiff's intestate drove on the track, was obscured by a house and an 18-foot cut, high enough to cover an engine coming out of it. To see an approaching train coming from the direction in which it was, an automobile must be about 16 feet from the track, about the length of an automobile, practically on the track. Henry Cash testified: "You can't see down the railroad until you get mighty near on it. There's a fill down there and you have to get almost on the track before you can see down it." The freight train approaching the highway was running about 60 miles an hour and blew no whistle and rang no bell. The plaintiff's intestate was driving about 12 or 15 miles an hour. The collision was at night, 8:30 o'clock p. m.

The facts in this case are stronger for plaintiff than those in *Moseley v. R. R.,* 197 N. C., 628. We think the court below was fully warranted in submitting the case to the jury under the Moseley and other cases in this jurisdiction. The *Moseley case, supra,* in many respects, may be said to be on "all-fours" with the present case. *Butner v. R. R.,* 199 N. C., 695; *Moore v. R. R.,* 201 N. C., 26.

A similar case is *Lincoln v. R. R.,* 207 N. C., 787, written by *Stacy, C. J.,* for the Court. The facts were: "Plaintiff's intestate was killed 10 January, 1933, at a railroad crossing near Washington, N. C., in a collision between the automobile or truck in which he was riding and a train operated by the defendant. It appears from the plaintiff's evidence that the train approached the crossing at a speed of 45 or 50 miles an hour without signals or warning of any kind, and that plaintiff's intestate's view was obstructed so that he could not see the oncoming train until he was within 4 or 5 feet of the track. Other witnesses said he could have seen the train 20 or 25 feet from the track. He drove upon the track and was hit by the train. . . . (P. 789.) Applying these principles to the facts of the instant case, it would seem that the motion to nonsuit should have been overruled. There was error in sustaining it. Speaking to a similar situation in *Harris v. R. R.,* 199 N. C., 798, 156 S. E., 102, it was said: 'The law in this State does not impose upon the driver of a motor vehicle, on his approach to a public crossing, the duty, under all circumstances, to stop his vehicle before driving on the crossing. Whether under all the circumstances, as the evidence tends to show, and as the jury may find from the evidence, the failure of the driver to stop, as well as to look and listen for an approaching train at a railroad crossing, was negligence on his part is ordinarily a question involving matters of fact as well as of law, and must be determined by the jury under proper instructions from the

court. This principle has statutory recognition in this State.' See, also, *Keller v. R. R.* and *Davis v. R. R.*, 205 N. C., 269, 171 S. E., 73, and cases there cited." *Harper v. R. R.*, 211 N. C., 398 (405-6).

On applying the law applicable to the facts the court below was so thorough and accurate that defendants took no exceptions to same.

The defendants set up a release. Plaintiff answered alleging fraud. The issue submitted to the jury was: "Was the execution of the release by the plaintiff procured by the fraud of the defendants as alleged in plaintiff's reply? Ans.: 'Yes.'" The evidence on this issue was plenary to have been submitted to the jury. The court below, on this aspect, to which there was no exceptions, charged the jury: "If the jury should find from the evidence, and by its greater weight, that plaintiff's intestate was killed through the negligence of the defendants, as alleged in the complaint, and should further find by clear, strong, and convincing evidence that a reasonable compensation for plaintiff's intestate's death was worth a sum considerably in excess of the amount which the defendants paid to plaintiff administrator for said release, and that the amount or sum of money so paid by the defendants to the plaintiff administrator was so grossly inadequate as to what would be reasonable compensation to the plaintiff administrator for the death of his intestate as would cause a reasonable, fair-minded person to say that the sum so paid plaintiff administrator was so small in comparison to the amount the plaintiff administrator was actually entitled to receive that it amounted to practically nothing, then the jury should consider such facts in determining whether the release was obtained by the claim agent, knowing the plaintiff administrator's financial necessities and distress, by fraud, and if they should reach such conclusion from such fact alone, then the jury should answer the first issue 'Yes.'" The court had theretofore charged what constituted fraud. *Butler v. Fertilizer Works,* 195 N. C., 409. At the time judgment was tendered and before it was signed by the court the defendants moved the court that the sum of $220.80, being the amount of consideration recited in the release and which was paid plaintiff on 3 May, 1934, be deducted from the amount awarded by the jury in its answer to the issue of damages. The court declined to deduct the said sum, with interest, or any part of either from the amount awarded by the jury as damages. The defendant excepted and assigned error. We think the court below was in error. The release was set aside, and although this money went to bury the plaintiff's intestate and for funeral expenses, yet in good morals and law it should be deducted from the recovery.

In *Holland v. Utilities Co.,* 208 N. C., 289 (292), we find: "Both reason and justice decree that there should be collected no double com-

pensation, or even over-compensation, for any injury, however many sources of compensation there may be." *Smith v. Thompson,* 210 N. C., 672 (677).

For the reason given the judgment of the court below is modified. In the trial we find no prejudicial or reversible error.

Modified and affirmed.

DEVIN, BARNHILL, and WINBORNE, JJ., dissent.