OPAL B. McGILL, WIDOW & ADMX., ESTATE OF DUNCAN H. McGILL, JR., DEC'D, AND DEBORAH JANE McGILL, MINOR DAUGHTER, v. BISON FAST FREIGHT, INC., AND BITUMINOUS CASUALTY CORPORATION.

(Filed 1 February, 1957.)

1. **Automobiles § 54a: Master and Servant § 39b—**

   Where the owner of a truck drives same on a trip in interstate commerce for an interstate carrier under a trip-lease agreement providing that the carrier's I.C.C. license plates should be used and the carrier retain control and direction over the truck, an assistant driver employed by the owner-lessor is an employee of the carrier within the coverage of the North Carolina Compensation Act. Further, if the owner-lessor be considered an independent contractor, but had less than five employees and no compensation insurance coverage, the carrier would still be liable under G.S. 97-19.

2. **Executors and Administrators § 9: Death § 10: Compromise and Settlement § 1—**

   Ordinarily, an executor or administrator has the right to compromise any disputed or doubtful claim of his decedent, including a purely statu-

tory action for wrongful death, provided he acts honestly and exercises the care of an ordinarily prudent person.

**3. Compromise and Settlement § 2: Master and Servant § 41—**

An assistant driver of a truck on a trip in interstate commerce under a trip-lease agreement was fatally injured while the truck was being driven by the owner-lessor. Claim for wrongful death against the owner-lessor and the interstate carrier was settled by the widow of the assistant driver in her capacity as administratrix. *Held:* The compromise and settlement extinguishes the liability of the owner-lessor for the wrongful death of intestate and also bars the carrier from maintaining an action therefor on any right of subrogation, it having been a party thereto.

**4. Compromise and Settlement § 2: Master and Servant § 47—**

The widow of a deceased employee, in her capacity as administratrix, executed a compromise and settlement with the employer on a common law claim for wrongful death under the mistaken belief that the Compensation Act was not applicable. *Held:* The compromise and settlement bars the widow in her capacity as a dependent from recovery under the Workmen's Compensation Act.

**5. Compromise and Settlement § 2—**

A compromise and settlement negotiated in good faith by persons *sui juris* and represented by counsel will not be disturbed for mistake of law.

**6. Compromise and Settlement § 1: Master and Servant § 53a—**

Compromise and settlement of the common law claim of the administratrix of a deceased employee for the wrongful death of the employee, executed under the mistaken belief that the Workmen's Compensation Act was not applicable, will not be disturbed on the ground that the Industrial Commission did not approve such settlement, since the "settlement" contemplated by G.S. 97-17, G.S. 97-82, is a settlement in respect of the amount of compensation to which claimants are entitled under the Act.

**7. Master and Servant § 43—**

A minor dependent under 18 years of age and who is without guardian, trustee or committee, is not barred during such disability by failure to give notice of claim for compensation as required by G.S. 97-22, *et seq.* G.S. 97-50.

**8. Master and Servant § 51—**

Claim for compensation for a dependent under 18 years of age must be prosecuted in the dependent's name by a general guardian, and the administratrix of the deceased employee is a proper claimant only when there are no dependents, so that the joinder of the administratrix with the dependents in the prosecution of a claim will be treated as surplusage.

**9. Master and Servant § 47—**

The widow of a deceased employee executed a compromise and settlement of the common law claim for wrongful death against the employer under mistake of law that the Workmen's Compensation Act was not applicable. *Held:* The compromise and settlement does not bar claim under the Compensation Act of the deceased's child under 18 years of age

without guardian, since the administratrix had no authority to act for the dependent child except in respect of claims or causes of action vested in the administratrix as such. However, the child's recovery under the Act should be diminished to the extent of the benefits ultimately received by the child from the compromise and settlement.

**10. Master and Servant § 39a—**

Where the accident, resulting in an employee's death, occurs in another state, but the contract of employment was made in this State between the resident employee and the resident employer, and the contract of employment is not expressly for services exclusively outside of the State, the North Carolina Industrial Commission has jurisdiction. G.S. 97-36.

JOHNSON, J., not sitting.

APPEAL by defendants from *Hobgood, J.,* August Term, 1956, of LEE. Claim for death benefits under Workmen's Compensation Act.

The findings of fact, conclusions of law and award made by the hearing Commissioner and thereafter adopted and affirmed by the full Commission and by the court, included the determination that Duncan H. McGill, Jr., died from injuries sustained by accident arising out of and in the course of his employment by Bison Fast Freight, Inc., hereinafter called Bison.

The decedent died 22 February, 1953, intestate, survived by his widow, Opal B. McGill, and one child, Deborah Jane McGill, then one year old.

It was stipulated that "Bituminous Casual Corporation was the compensation carrier for Bison Fast Freight, Inc., and was on the risk on February 22, 1953."

The award, affirmed by the court's judgment, provided, in substance, that the defendants pay: (1) compensation to said widow and child, share and share alike, at the rate of $30.00 per week, beginning as of 22 February, 1953, and continuing for a period of 260 weeks thereafter; (2) the sum of $200.00 as funeral benefits; (3) costs; and (4) an attorney's fee of $600.00, to be deducted from the accrued compensation due.

While operated by J. D. Matthews, the tractor-trailer in which decedent was riding, asleep, turned over near Sylvatus, Virginia, causing decedent's instant death.

Bison was, but Matthews was not, a common carrier by freight under Interstate Commerce Commission franchise. Matthews, the owner, had leased this tractor-trailer to Bison, "to be used by Lessee in transporting property from December 12, 1952, to December 31, 1953." Bison's I. C. C. license plates were attached.

The Lessor (Matthews) agreed, *inter alia,* to pay all costs in maintaining and operating the tractor-trailer, including "the driver'(s) salary," and to comply with "all the requirements of all applicable

State and Federal laws, rules and regulations of the Interstate Commerce Commission . . ."

It was agreed that "during the term of this lease, the said vehicle(s) shall be solely and exclusively under the direction and control of the Lessee who shall assume full common carrier responsibility (1) for loss or damage to cargo transported in such motor vehicle(s) and (2) for the operation of such vehicle."

Matthews received as compensation a percentage of the freight revenues received by Bison from the operation of the leased equipment. Ordinarily, Matthews, who was head driver, was accompanied by an assistant; and in such case the assistant's compensation was a percentage of the revenue.

Uncontradicted evidence is to the effect that Bison's instructions to Matthews were to take the load, then at Bison's place of business in Sanford, North Carolina, to Rittman, Ohio, unload it there Monday morning, and then go to Cincinnati, Ohio, pick up a load of sheet metal there and bring it back to Sanford by Tuesday; and that he could not carry out these instructions under Interstate Commerce Commission regulations unless accompanied by an assistant driver to take turns with him in the operation of the tractor-trailer.

The aforesaid instructions were given to Matthews on Saturday, 21 February. Decedent, a qualified driver, was employed to make the trip as Matthews' assistant.

They left Sanford on Saturday, 21 February, shortly before midnight. Decedent drove from Sanford to a trucking terminal near Sylvatus, Virginia, while Matthews slept, this trip taking approximately six hours. There they had breakfast and the tractor was serviced. When they left, Matthews took over the driving. Matthews had driven some 10 or 11 miles when the fatal accident occurred.

On 3 March, 1953, Mrs. Opal B. McGill, the widow, was appointed and qualified as administratrix of her husband's estate. The administration proceeding was before the Clerk of the Superior Court of Hoke County. As such administratrix, she filed with said clerk her verified petition dated 7 July, 1953, in which she set forth that she had been offered $3,500.00 "as settlement of her claim for the fatal injury" of her intestate; that, after full consideration, she was of the opinion that the offer was fair and reasonable and "that it would be to the best interest of the estate . . . that said offer be accepted"; and she prayed that said clerk authorize her to accept said offer "as full settlement and discharge of all claims against J. D. Matthews and Bison Fast Freight, Inc." and to execute and deliver to them "an absolute release." In accordance with her prayer, said clerk authorized the settlement. His order, dated 8 July, 1953, refers to her claim as a claim "for the wrongful death of Duncan H. McGill, Jr." The settle-

ment was consummated on 8 July, 1953. Bison's $3,500.00 check was payable jointly to "Mrs. Opal B. McGill, administratrix of the Estate of Duncan H. McGill, Jr." and her counsel. After deduction of attorney fee, the administratrix received $2,800.00 which, according to her testimony, is "a part of the assets of the estate of Duncan McGill." Incident to said settlement, Mrs. McGill as administratrix and individually executed a comprehensive full release, providing, *inter alia,* that she released and discharged Matthews and Bison from all claims, etc., "for, by reason of, or growing out of the death of the said Duncan H. McGill, Jr."

On 16 February, 1954, the Commission received its first notice of the present claim for compensation, to wit, a letter from counsel. Apparently, no notice was given to defendant carrier until May, 1954.

Defendants, in apt time, made and preserved exceptions to the findings of fact, conclusions of law and award; and, upon this appeal from said judgment, they bring forward numerous assignments of error. These relate principally to defendants' contentions that claimants' rights to compensation are barred (1) by said settlement, (2) by failure to give notice as required by G.S. 97-22, G.S. 97-23, and G.S. 97-24, and (3) by G.S. 97-36, the accident having occurred in Virginia.

*John D. McConnell, Teague & Johnson, and Grady S. Patterson, Jr., for appellees.*

*Uzzell & Dumont for appellants.*

Bobbitt, J. It is now established in this jurisdiction that an interstate carrier, which exercises its franchise rights by transporting its freight in leased equipment under leases such as that here involved, is liable in damages for injuries to third parties caused by the negligent operation of such equipment in the prosecution of such carrier's business. *Wood v. Miller* 226 N.C. 567, 39 S.E. 2d 608; *Motor Lines v. Johnson,* 231 N.C. 367, 57 S.E. 2d 388; *Eckard v. Johnson,* 235 N.C. 538, 70 S.E. 2d 488; *Hill v. Freight Carriers Corp.,* 235 N.C. 705, 71 S.E. 2d 133; *Newsome v. Surratt,* 237 N.C. 297, 74 S.E. 2d 732.

And, with specific reference to the Workmen's Compensation Act, this Court has held: 1. The dependents of a lessor-operator, who was transporting freight for the lessee, an interstate carrier, under authority of the lessee's I. C. C. franchise and license plates, were entitled to recover death benefit compensation from the lessee. *Brown v. Truck Lines,* 227 N.C. 299, 42 S.E. 2d 71. 2. The dependents of the lessor's driver, whose death occurred while operating the leased equipment under like circumstances, were entitled to death benefit compensation from the lessee. *Roth v. McCord,* 232 N.C. 678, 62 S.E. 2d 64.

In the *Brown* and *Roth cases,* for the reasons stated, the death was regarded as arising out of and in the course of decedent's employment by the lessee. Here the decedent was an assistant driver, aboard the tractor-trailer but not operating it on the occasion of the mishap causing his fatal injuries. His status, with reference to the Act, was that of an employee of the lessee, whose death resulted from an accident arising out of and in the course of such employment. Hence, on this aspect of the case, the conclusion reached is that the dependents of McGill had the right to recover compensation under the Act from Bison and its compensation carrier.

No question is involved here as to the rights and liabilities of Bison and Matthews *inter se,* by reason of the terms of the lease agreement or otherwise. Compare: *Hill v. Freight Carriers Corp.,* 235 N.C. 705, 71 S.E. 2d 133; *Newsome v. Surratt, supra.*

It appears here that Matthews had no compensation insurance coverage; and, unless decedent is so considered, Matthews had no employees. Hence, if Matthews were considered an independent contractor, as defendants contend, it would seem that Bison would be liable for the payment of compensation under the Act. G.S. 97-19.

Even so, defendants contend that the settlement made by Opal B. McGill, individually and as administratrix, constitutes a complete bar to claimants' right to compensation under the Act. In considering this contention, the following must be kept in mind.

Since Matthews had less than five employees, the Act did not apply to him. G.S. 97-2(a). If McGill's death was caused by the negligence of Matthews in respect of the manner in which he operated the tractor-trailer, unquestionably *his administratrix* had a good cause of action against Matthews. G.S. 28-173. As to Bison, the only remedy was a proceeding by *his dependents* for compensation under the Act. G.S. 97-10; *Bright v. Motor Lines,* 212 N.C. 384, 193 S.E. 391; *Hunsucker v. Chair Co.,* 237 N.C. 559, 570-571, 75 S.E. 2d 768, and cases cited. As stated by *Barnhill, J.* (later *C. J.*): "While the rights of the employee, as against a third party after claim for compensation is filed, are limited, G.S. 97-10, there is nothing in the Act which denies him the right to waive his claim against his employer and pursue his remedy against the alleged tort-feasor by common law action for negligence." *Ward v. Bowles,* 228 N.C. 273, 275, 45 S.E. 2d 354.

Ordinarily, an executor or administrator has the right to compromise any disputed or doubtful claim of his decedent provided he acts honestly and exercises the care of an ordinarily prudent person. 33 C.J.S., Executors and Administrators, Sec. 181. "In the ordinary course of the administration all that is required of him is that he act in good faith and with such care, foresight and diligence as an ordinarily sensible and prudent man would act with his own property under like cir-

cumstances." *Higgins, J.,* in *Poindexter v. Bank,* 244 N.C. 191, 92 S.E. 2d 773. And this rule is applicable to a purely statutory cause of action for wrongful death. 16 Am. Jur., Death Sections 53 and 159. Acceptance of this rule in this jurisdiction is implied in *Jenkins v. Fields,* 240 N.C. 776, 83 S.E. 2d 908.

There is force in the contention that when the widow, individually and as administratrix, effected said settlement, irrespective of her misapprehension as to the law applicable to her rights as against Bison, she elected to extinguish the liability of Matthews by acceptance of the $3,500.00; that thereafter she had no further remedy against Matthews; and that Bison, if subrogated to the rights of the administratrix, would have no standing to prosecute a wrongful death action against Matthews, Bison having been a party to the settlement. The doctrine of election of remedies is discussed in *Surratt v. Insurance Agency,* 244 N.C. 121, 93 S.E. 2d 72, and in *Davis v. Hargett,* 244 N.C. 157, 92 S.E. 2d 782.

If we exclude Matthews from consideration, the situation as to Bison alone would be as follows: rather than two available inconsistent remedies, only one remedy was available; and the settlement was made in the belief that this one available remedy was an action for wrongful death. This belief, of course, was grounded on the idea that McGill was *not* an employee of Bison. Therefore, appellants contend, the widow cannot now assert that McGill was an employee of Bison. Compare *Deaton v. Elon College,* 226 N.C. 433, 38 S.E. 2d 561.

We are constrained to hold that Mrs. Opal B. McGill, in respect of her right to recover compensation under the Act, is barred by said settlement and release.

It appears that the $3,500.00 settlement was negotiated and effected in good faith. Mrs. McGill was represented by counsel. The grounds upon which the defendants now base their contentions that McGill's dependents have no claim for compensation against Bison under the Act, and perhaps other factors not disclosed by the record, apparently lead the administratrix and her counsel to the considered opinion that the sole remedy available against Bison was an action to recover damages for alleged wrongful death. Unfortunately, the decision now reached by this Court was not available for their guidance. While it appears now that they were mistaken as to the applicable law, the fact remains that the $3,500.00 was paid and accepted in full settlement of all claims against both Bison and Matthews. No attack is made upon the settlement. Only the legal effect thereof as made is under consideration.

It is noted that the recovery by the administratrix for alleged wrongful death, except as to burial expenses, is for distribution equally between the widow and child. G.S. 28-173; G.S. 28-149 (i). It is fur-

ther noted that, under the Act, the compensation payable would be to the widow and child, share and share alike, the award to provide for burial expenses not exceeding $400.00. G.S. 97-38; G.S. 97-39; *Wilson v. Construction Co.*, 243 N.C. 96, 89 S.E. 2d 864.

A compromise and settlement negotiated in good faith by persons *sui juris* and represented by counsel will not be disturbed by a mere mistake of law or mistake as to its legal effect. 15 C.J.S., Compromise and Settlement Section 36(c); 11 Am. Jur., Compromise and Settlement Section 31; *Dixie Lines v. Grannick*, 238 N.C. 552, 555, 556, 78 S.E. 2d 410. It is noted that in *Allgood v. Trust Co.*, 242 N.C. 506, 88 S.E. 2d 825, the basis of decision was that the evidence did not establish as a matter of law the defense of accord and satisfaction. Here the proceedings before the clerk and the release leave no room for doubt that a full and complete settlement was intended.

In accordance with claimants' contention, the court upheld the conclusion of law that the $3,500.00 was not a bar to the award of compensation herein because it "has never been submitted to or approved by the North Carolina Industrial Commission as provided by G.S. 97-17." We are constrained to hold that the only "settlement" contemplated by G.S. 97-17 and G.S. 97-82 is a settlement in respect of the amount of compensation to which claimants are entitled under the Act. Such a settlement is not involved here.

Since the widow is barred, defendants' contentions in respect of the failure to give notice as required by G.S. 97-22, G.S. 97-23, and G.S. 97-24, become immaterial. The minor child, for whom no general guardian has been appointed, is certainly not barred. G.S. 97-50 provides: "No limitation of time provided in this article for the giving of notice or making claim under this article shall run against any person who is mentally incompetent, or a minor dependent, as long as he has no guardian, trustee, or committee." While, for the purposes of the Act, a minor becomes *sui juris* upon attaining the age of 18 years, until then he may prosecute his proceeding for compensation only when represented by general guardian or other legal representative. *Lineberry v. Mebane*, 219 N.C. 257, 13 S.E. 2d 429. As to the dependent minor claimant, she is the real party in interest and the proceeding must be prosecuted in her name by general guardian. The administratrix of the decedent is the proper claimant in a proceeding for compensation only when there are no dependents, whole or partial. *Hunt v. State*, 201 N.C. 37, 158 S.E. 703; G.S. 97-40; G.S. 1-57. Apparently, whether the proceeding was properly constituted as indicated was not raised in several of the cases heretofore presented to this Court. In view of the foregoing, the presence of the administratrix as a claimant is surplusage; and in further proceedings herein the dependent minor claimant should appear by general guardian.

McGILL v. FREIGHT.

This leaves for consideration the effect, if any, of said settlement upon the award to be made.in favor of the dependent minor claimant.

The settlement by the administratrix does not bar the dependent minor claimant for the simple reason that the administratrix had no authority to act for her except in respect of claims or causes of action vested in the administratrix as such. The widow, neither as administratrix nor as natural guardian, could conclude a settlement or execute a release that would bar the minor dependent's claim for compensation. Hence, the minor dependent is entitled to recover her one-half of the compensation payable under the Act.

Even so, as stated by *Schenck, J.*, in *Holland v. Utilities Co.*, 208 N.C. 289, 292, 180 S.E. 592; ". . . we think the weight of both authority and reason is to the effect that any amount paid by anybody, whether they be joint tort-feasors or otherwise, for and on account of any injury or damage should be held for a credit on the total recovery in any action for the same injury or damage." *Preddy v. Britt*, 212 N.C. 719, 194 S.E. 494; *Smith v. Thompson*, 210 N.C. 672, 188 S.E. 395; *Hester v. Motor Lines*, 219 N.C. 743, 14 S.E. 2d 794.

The result is that the award in favor of the dependent minor should be diminished to the extent of the amount of the release consideration now held by the administratrix for distribution to said dependent minor and actually available for payment to a guardian for her.

We have considered each of defendant's other contentions, whereby they seek to defeat the present claim in its entirety. Brief reference will be made to the following:

We reject as untenable defendants' contention that decedent's death was not compensable under the Act because the fatal accident occurred in Virginia. The Commission had jurisdiction under G.S. 97-36. It appears affirmatively that the contract of employment was made in this State, that Bison's place of business was in this State, and that decedent resided in this State; and further, that decedent's employment "was not expressly for service exclusively outside of the state." *Aylor v. Barnes*, 242 N.C. 223, 87 S.E. 2d 269.

Incidental mention is made in defendants' brief to their contention "that the Commission's findings of fact and conclusions of law in reference to the deceased's average weekly wage is determined contrary to the provisions of G.S. 97-2(e)." Suffice to say, the evidence, in our opinion, supports the Commission in this respect.

Moreover, the Commission's denial of defendants' motion that Prunty Motor Express be joined as a defendant herein was fully justified by the evidence.

By reason of the foregoing, the judgment of the court below is vacated and the cause is remanded, to the end that further proceedings

may be had and an award made for the benefit of said minor claimant in accordance with the law as stated herein.

Judgment vacated and cause remanded.

JOHNSON, J., not sitting.