WILLIS E. BYRD v. NORTH STATE MOTOR LINES, INC.; ROWE'S TRUCKING COMPANY, INC.; AND GEORGE THOMAS WOOLARD.

(Filed 15 January, 1965.)

**1. Automobiles § 41c—**

Evidence that defendant's tractor-trailer, traveling east on a street between warehouses at a port, struck the "counter weight" of a fork lift which was unloading a tractor-trailer on the north side of the street, resulting in the injury in suit, *held* sufficient to be submitted to the jury on the issue of negligence.

**2. Appeal and Error § 1—**

Where judgment of nonsuit is reversed, the Supreme Court will refrain from discussing the evidence except to the extent necessary. to explain the conclusion reached.

**3. Automobiles § 54a—**

A carrier will be held liable in damages for injuries to third persons caused by the negligent operation of a vehicle transporting goods under authority of its intrastate franchise by application of the same public policy which imposes liability on an interstate carrier for injuries resulting from the operation of a vehicle under its interstate franchise, notwithstanding the vehicle may be driven by the owner-lessor at the time of the accident.

**4. Same— If a carrier of agricultural products is exempt from Federal franchise, he is subject to State regulation.**

The evidence tended to show that the owner of a tractor was operating the tractor and a trailer in transporting tobacco from a municipality in this State to a port in the State for shipment in foreign commerce, that defendant carrier had leased the equipment, and that the trailer had painted on its side the name of defendant carrier and the identifying number assigned to the trailer by the Utilities Commission. *Held:* If no interstate franchise was required because the freight consisted of agricultural products, then the shipment was not exempt from State regulation, and the transportation was under authority of the intrastate franchise rights, and defendant carrier is liable for injuries to third persons resulting from the negligent operation of the vehicle. G.S. 62-121.7(8).

**5. Same—**

The accident in suit occurred after the cargo had been unloaded at a warehouse and after the tractor-trailer had been turned around and was in the process of leaving the port terminal. *Held:* The liability of the carrier under his franchise continued at least during the time the vehicle was on the port terminal premises.

**6. Automobiles § 54f—**

Evidence in this case *held* sufficient to be submitted to the jury on the issue of whether the owner-operator of the tractor-trailer in the shipment in intrastate commerce was the agent of the carrier under whose franchise authority the shipment was transported.

APPEAL by plaintiff from *Peel, J.,* March 16, 1964, Civil Session of CARTERET.

Personal injury action.

Plaintiff was employed by the North Carolina State Ports Authority as operator of a tow-motor fork lift. On November 21, 1961, about 11:00 a.m., in Morehead City, N. C., on the Port Terminal premises of the Ports Authority, in the area between Warehouse #2 and Warehouse #4, there was a collision between a tractor-trailer combination (T/T), operated by defendant Woolard, and the fork lift operated by plaintiff.

The stipulations and evidence establish or tend to establish the background facts narrated below.

The area between Warehouse #2 and Warehouse #4 is a paved east-west street. Warehouse #4 is north of and parallel with Warehouse #2. The distance from the outer edge of the loading platform (ramp) along the north side of Warehouse #2 to the outer edge of a similar ramp along the south side of Warehouse #4 is 52 feet and 2 inches. There is "a drainage dip" in the center of this street. Immediately west of said warehouses, said east-west street intersects with a north-south street. The width of the north-south street is 49 feet and 9 inches. West of said intersection, and in line with Warehouse #2 and Warehouse #4, respectively, are Warehouse #3 and Warehouse #5.

The T/T operated by Woolard was in a line of similar trucks headed west for unloading on the portion of the ramp along the north side of Warehouse #2 opposite Door #16. In its turn, it pulled up "within about two inches of" the ramp. This T/T combination is 49 feet long and about 8 feet wide. It includes "a 37-foot platform trailer." "The West edge of Door #16 is 84 feet 7 inches from the West edge of Warehouse #2." The load on the trailer consisted of 27 hogsheads of tobacco. Each of nine rows consisted of two hogsheads on the bed of the trailer and a third hogshead above and between them. When the T/T first stopped, the three hogsheads constituting the row at the rear of the trailer were opposite Door #16. The top hogshead was pushed onto the ramp by the projecting prongs or "shoe" of the fork lift and thereafter the lower two hogsheads were pushed onto the ramp by manual labor. After the removal of each row, the T/T backed the short distance necessary to bring the next row of hogsheads into position opposite Door #16. Each time the T/T backed, "(t)he fork lift would back up from one foot to two feet to clear the truck it was unloading."

The overall length of the fork lift is 14 feet, 9 inches. It is four feet wide. It weighs between seven and eight thousand pounds. The prongs or "shoe" used in pushing hogsheads from a trailer onto the ramp are at

the front of the fork lift. There is a "counter-balance" on the back of the fork lift, "a heavy piece of steel . . . to keep the front end from tipping up when unloading is being done." "The operator sits close to the rear over the motor . . ."

After unloading, the T/T operated by Woolard pulled away from said ramp and proceeded west to said intersection. There, after first turning right (north) into the intersecting north-south street and then backing therein to a point south of the east-west street, Woolard proceeded forward and made a right turn into the east-west street. While Woolard was proceeding as indicated, another truck had pulled into position for unloading at Door #16 in like manner and plaintiff, operating the fork lift, had pushed off "two tiers of hogsheads."

The T/T operated by Woolard was proceeding east in said east-west street (between Warehouse #2 and Warehouse #4) when the tool box under the right side of the bed of the trailer and approximately midway the length thereof, and thereafter the right tandem wheels of the trailer, collided with the right portion of the "counter-balance" of the fork lift. On account of said collision, plaintiff was thrown from said fork lift and seriously injured.

Evidential facts pertinent to the agency issue will be set forth in the opinion.

Plaintiff alleged the collision and his injuries were caused by the negligence of Woolard while acting as agent for the corporate defendants. Defendants, by joint answer, denied Woolard was negligent; denied Woolard was acting as agent for the corporate defendants; and alleged, as a conditional further defense, the contributory negligence of plaintiff. Other further defenses alleged by defendants are not pertinent to decision on this appeal.

When the case was called for trial, plaintiff announced he would take a voluntary nonsuit as to Rowe's Trucking Company, Inc. At the conclusion of plaintiff's evidence, Woolard and North State Motor Lines, Inc., moved for judgment(s) of involuntary nonsuit. Woolard's motion was overruled. The motion of North State Motor Lines, Inc., was allowed. Thereupon, plaintiff announced he would take a voluntary nonsuit as to Woolard. Judgment(s) of voluntary nonsuit as to Woolard and as to Rowe's Trucking Company, Inc., was entered.

Judgment of involuntary nonsuit was entered as to North State Motor Lines, Inc. Plaintiff excepted and appealed.

*Wheatly & Bennett for plaintiff appellant.*
*Fields & Cooper and Dupree, Weaver, Horton & Cockman for North State Motor Lines, Inc., defendant appellee.*

.

BOBBITT, J.  Careful consideration impels the conclusion that the evidence, when considered in the light most favorable to plaintiff, is sufficient to require submission for jury determination of an issue as to the alleged actionable negligence of Woolard and that such evidence does not establish contributory negligence as a matter of law. The over-ruling of Woolard's motion for judgment of nonsuit indicates Judge Peel's view, as to this feature of the case, was in accord with ours. Having reached this conclusion, we deem it appropriate to refrain from further discussion of the evidence (relevant to said issues) presently before us. *Weaver v. Bennett,* 259 N.C. 16, 19, 129 S.E. 2d 610; *Tucker v. Moorefield,* 250 N.C. 340, 342, 108 S.E. 2d 637, and cases cited.

Since a judgment of voluntary nonsuit was entered as to Woolard, the sufficiency of the evidence as to Woolard's actionable negligence is relevant on this appeal only if the evidence is also sufficient to require submission of an issue as to Woolard's alleged agency for North State Motor Lines, Inc., (North State) on the occasion of the collision.

It is established by the pleadings (1) that Woolard is a resident of Rocky Mount, N. C., and (2) that North State is a North Carolina corporation with principal office and place of business in Rocky Mount, N. C.

It was stipulated that "North State Motor Lines, Inc. was a common carrier on the day in question and that on that date it was operating under a certificate issued by the Utilities Commission of the State of North Carolina and that it was also operating under a certificate is-sued by the Interstate Commerce Commission and further that it was hauling exempt commodities."

The principal evidence relevant to the agency issue consists of the testimony of Donald Bryan, Assistant General Manager of North State, examined by plaintiff at trial as an adverse witness. His testi-mony, summarized except when quoted, is set forth below.

Woolard was the owner as well as the operator of the (1958 Chevro-let) tractor. North State "obtained possession of that tractor under routine lease agreement from George Woolard." North State had leased the (1950 Trailmobile) trailer from Rowe Trucking Co., Inc., the owner.

In compliance with the requirement of the North Carolina Utilities Commission, the sign, "North State Motor Lines, Inc., Rocky Mount, N. C.," and also the identifying sign, "Truck No. 122," a vehicle num-ber assigned for use by North State, were *painted* on the Woolard tractor.

Under the *oral* lease between North State and Woolard, the compen-sation Woolard received was paid to him as owner. Woolard was to re-

ceive as compensation "65% of the gross revenue earned by his truck." However, North State was to deduct therefrom: (1) for gasoline and oil purchased on its credit; (2) for repairs made on its credit; (3) for tire repairs or purchases made on its credit; (4) for "moneys loaned to him for operating expenses at various times"; and (5) for the amount of premiums paid "to cover him under (its) Workmen's compensation policy."

Rowe Trucking Co., Inc., was paid a commission "from the 35% portion that was retained by North State Motor Lines." "A record was kept of what the trailer was used for and . . . it was kept with Woolard's tractor that particular time as a unit, for bookkeeping purposes. Woolard pulled any trailer that North State Motor Lines provided."

On November 21, 1961, North State dispatched Woolard's tractor, pulling the 1950 Trailmobile trailer with a cargo of 27 hogsheads of tobacco, from Rocky Mount to said Port Terminal in Morehead City for export "through the Port." The rate covering the shipment "didn't come through the Utilities Commission," but was in accordance with the rate that came to North State from the Tariff Bureau of the Motor Carriers Traffic Association, Inc. Woolard had nothing to do with determining the rate. The contract covering the shipment was between the shipper and North State. The rate was based on the trip from Rocky Mount to Morehead City without reference to a return trip from Morehead City to Rocky Mount.

While North State did not designate the route Woolard would travel from Rocky Mount to Morehead City, Woolard "was to deliver (the shipment) . . . to Morehead City as soon as possible barring any difficulties or taking time out to eat or stopping to fuel his truck . . ." The only instruction given Woolard was to call North State after he had unloaded in Morehead City "to determine if they had another truck load of freight to offer for him to transport, and if Mr. Woolard wanted another load he would get in touch with the company." Woolard was free to take or not take another load. North State, on this occasion, made unsuccessful efforts to find another load involving a trip from Morehead City to Rocky Mount, Wilmington, Norfolk or elsewhere.

Bryan testified: "He (Woolard) could have obtained a load of freight that was justifiable in his own mind to transport provided that particular load of freight was moved under North State Motor Lines bill of lading," and if he did so obtain a load of freight and did so move it under North State's bill of lading, the money would have been paid in gross to the office of North State.

Bryan testified Woolard was obligated to look out for and protect the trailer while it was in his possession. Under examination by plaintiff's counsel, Bryan testified he did not know whether Woolard was obligated to bring the trailer back to Rocky Mount. This was at variance with his further testimony when, under examination by North State's counsel, he said: "Mr. Woolard was under no obligation to bring the trailer back to Rocky Mount."

It is noted: Absent evidence of specific agreement with reference thereto, this Court cannot accept as authoritative Bryan's legal opinions as to whether Woolard was obligated to bring the trailer back to Rocky Mount or as to the extent Woolard was obligated to comply with North State's directives.

North State contends plaintiff's evidence is insufficient to require submission of an issue as to agency. It contends Bryan's testimony establishes that Woolard was an independent contractor rather than an agent.

"It is now established in this jurisdiction that an interstate carrier, which exercises its franchise rights by transporting its freight in leased equipment under leases such as that here involved, is liable in damages for injuries to third parties caused by the negligent operation of such equipment in the prosecution of such carrier's business." *McGill v. Freight,* 245 N.C. 469, 473, 96 S.E. 2d 438, and cases cited.

Nothing in the record indicates either intrastate or interstate franchise rights had been granted to Woolard. Whether Woolard was free to do so or not, there was no evidence he used his tractor to transport commodities for any person, firm or corporation other than North State. North State's name and its identifying truck number were painted on Woolard's tractor. It may be inferred from the facts in evidence that the relationship between North State and Woolard was a continuing relationship, albeit terminable at will, and that Woolard's owner-operated tractor was regularly used in pulling North State (owned or leased) trailers as an integral part of the prosecution of North State's business as a common carrier.

North State contends Woolard, on November 21, 1961, was not exercising North State's interstate or intrastate franchise rights as a common carrier.

North State contends no interstate franchise was required because the cargo consisted wholly of tobacco, an exempt (agricultural) product. Neither brief cites statute or decision bearing upon this subject. As pertinent to this subject, reference is made to the following: 49 U.S.C.A. § 303(b)(6); *Frozen Food Express v. United States,* 148 F. Supp. 399 (S.D. Tex.) *aff'd sub nom. Akron, Canton & Youngstown R.*

R. v. Frozen Food Express, 355 U.S. 6, 78 S. Ct. 38, 40, 42, 2 L. Ed. 2d 22; Interstate Commerce Commission v. Yeary Transfer Co., 104 F. Supp. 245 (E.D. Ky.), aff'd 202 F. 2d 151 (6 Cir.); Interstate Commerce Com'n v. Allen E. Kroblin, Inc., 113 F. Supp. 599, 603 (N.D. Ia.), and cases cited; Strickland Transportation Co. v. Brown Express, 321 S.W. 2d 357, 360 (Tex. Civ. App.). For present purposes, we accept North State's contention that the shipment of November 21, 1961, was exempt from the provisions of the Interstate Commerce Act.

North State contends no intrastate franchise was required because the cargo was transported from Rocky Mount to the Port Terminal in Morehead City for shipment to an overseas destination. Assuming, for present purposes, the sufficiency of the evidence to show the shipment was subject to the power of Congress "(t)o regulate commerce with foreign nations," U. S. Constitution, Article I, § 8, if, as North State contends, the cargo consisted wholly of an exempt commodity, Congress has disavowed any intent to regulate such shipment.

"Intrastate commerce," as defined in G.S. 62-121.7(8), "includes all transportation of property by motor vehicles within the State for compensation in interstate or foreign commerce which has been exempted from regulation under the Interstate Commerce Act." We find nothing in G.S. 62-121.8, captioned, "Exemption from regulations," that would exempt the shipment of November 21, 1961, from the provision of the North Carolina Truck Act (G.S. Chapter 62, Article 6B). G.S. 62-121.15(a) provides, with exceptions not applicable here, that no person shall engage in the transportation of property in "intrastate commerce" until and unless such person shall have applied to and obtained from the North Carolina Utilities Commission a certificate or permit authorizing such operations.

If Woolard, when transporting the cargo of tobacco on November 21, 1961, was not acting under authority of North State's interstate franchise rights, it seems clear he was acting under authority of North State's intrastate franchise rights. If so, the same considerations of public policy on which the legal principles stated in McGill v. Freight, supra, and cases cited therein, are based would apply; and it is our opinion, and we so decide, that an intrastate carrier, which exercises its franchise rights by transporting its freight in leased equipment under a lease such as that here involved, is liable in damages for injuries to third parties caused by the negligent operation of such equipment in the prosecution of such carrier's business.

True, the collision occurred after the cargo of tobacco had been unloaded. However, we are of opinion, and so decide, that the liability of North State for Woolard's operation of the leased equipment con-

tinued (at least) during the time it was on the Port Terminal premises.

Apart from the foregoing, the evidence was sufficient for submission to the jury as to the alleged agency of Woolard on legal principles stated in *Cooper v. Publishing Co.*, 258 N.C. 578, 129 S.E. 2d 107, and cases cited therein. The evidential matters set forth above, without repetition, indicate the factors (*indicia*) tending to support the view that Woolard was acting as agent of North State.

For the reasons stated, the judgment of involuntary nonsuit as to North State is reversed. Since decision is based on the admitted evidence, it is unnecessary to consider whether the court erred in the exclusion of proffered testimony.

Reversed.