The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some minor technical modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as
 STIPULATIONS
1. On 3 February 1996, plaintiff sustained an injury when the tractor-trailer in which she was a passenger collided with another vehicle in Dallas, Texas.
2. On that date, defendant did not have in effect a policy of workers' compensation insurance.
3. Plaintiff has been out of work from 4 February 1996 through the date of the hearing.
4. A set of exhibits identified as Defendant's Exhibits A-K, is admitted into evidence.
5. An Industrial Commission Form 22, Wage Chart, is admitted into evidence.
6. An Interstate Commerce Commission document bearing a decision date of 19 December 1994, is admitted into evidence.
7. Copies of medical records and bills from Johnson Pain Management, P.A. received from defendant's counsel on 10 January 1997 are admitted into evidence.
8. On 3 February 1996, defendant regularly employed two individuals as office workers.
9. A set of plaintiff's medical records consisting of eighty-five pages, received on 10 March 1997, is admitted into evidence.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff began working for defendant as a tractor trailer driver in 1994. Defendant's place of business was located in Burgaw, North Carolina. Defendant was a long haul trucking business that operated in interstate commerce, primarily hauling fresh fruits and vegetables from the west coast to the east coast. Defendant also shipped dry freight from the east coast to the west coast.
2. At any given time, defendant owned between ten and fifteen tractor trailer rigs that were used in its business. Plaintiff and her husband operated defendant's trucks as a team, alternating driving responsibilities.
3. On 8 April 1995, defendant provided plaintiff with a "Contract Driver Handbook". Plaintiff read and agreed to adhere to the instructions and regulations contained in the handbook.
4. The handbook contained provisions relating to pay rates, travel advances, operating expenses and the issuance and use of Comcash and Comcheck cards that defendant issued to its drivers. The handbook also contained instructions for load verification by the drivers. The drivers were instructed to note purchase order numbers. The drivers were required to call defendant once each day between the hours of 8:00 a.m. and 10:00 a.m. or between 4:00 p.m. and 6:00 p.m. Defendant could fine drivers $25.00 for failing to call in as instructed. Drivers were instructed to call defendant whenever they reached their pick up and delivery destinations. Discrepancies between bills of lading and loads were to be brought to the attention of defendant.
5. If drivers needed to take time off, they were to notify defendant at least two weeks in advance.
6. Drivers were further instructed in the manner of preparing driving log books and when to provide them to defendant. Similarly, defendant instructed drivers when and how to send certain paper work to defendant. Failure to send defendant the paperwork within the prescribed time period could result in the imposition of a $25.00 fine. Drivers were subject to pre-employment physical examinations and random drug testing. Positive drug tests were cause for immediate termination. The costs of the drug tested were to be deducted from drivers' paychecks.
7. Drivers were responsible for maintaining the tractor trailer rigs in accordance with instructions and schedules provided by defendant. The maintenance defendant required included oil, fuel and water filter changes. Drivers were instructed to keep the trucks and trailers washed and waxed, to clean interiors and to monitor the condition of the trucks' tires.
8. On 8 August 1994, plaintiff and defendant's predecessor executed a "Non-Exclusive Contract". The contract's duration was thirty days or less.
9. On and prior to 3 February 1996, defendant withheld federal income taxes from plaintiff's wages.
10. On Saturday, 3 February 1996, plaintiff and her husband were traveling east on Interstate Highway 20 in Dallas, Texas, when they were involved in a collision with another vehicle. Plaintiff was riding in the passenger seat at the time of the collision. Initially, plaintiff did not believe that she was injured in the collision. However, she began to experience pain the following day.
11. On 8 February 1996, plaintiff presented to Onslow Family Medical Center. On that date, plaintiff had pain in her low back and hips. Plaintiff was prescribed medications and referred to physical therapy beginning 13 February 1996.
12. On 20 February 1996, plaintiff presented to Onslow Memorial Hospital. On that date, plaintiff had numbness in her hands and legs and pain in her lower back and left buttock. Plaintiff's medications were changed and she was excused from work until she attended an appointment that was scheduled with Dr. Gross on 6 March 1996. When plaintiff presented to Dr. Gross, she had a lumbosacral strain, with no neurological deficits. Dr. Gross referred plaintiff to physical therapy for a strengthening program and excused plaintiff from work due to her inability to sit for prolonged periods of time. Dr. Gross continued to excuse plaintiff from work through 23 July 1996. On 3 September 1996, Dr. Gross referred plaintiff to Dr. Muther for a second opinion.
13. On 18 September 1996, plaintiff presented to Dr. Muther who performed EMG and NCV testing. These studies revealed that plaintiff had a bilateral L5 radiculopathy, left greater than right. Thereafter, plaintiff continued under the care of Dr. Gross, who eventually referred her to Dr. Johnson for pain management. Dr. Johnson treated plaintiff with epidural steroid injections which diminished plaintiff's symptoms, at least temporarily. Dr. Johnson continued to treat plaintiff through the date of the hearing in this case.
14. Plaintiff reached maximum medical improvement on 4 January 1997. There is no evidence of record whether plaintiff retained any permanent impairment as a result of the incident on 3 February 1996.
15. Plaintiff's average weekly wage was $548.94.
16. As a result of her lumbosacral strain, plaintiff was incapable of earning wages from defendant, or any other employer from 4 February 1996 through the date of the hearing in this case.
17. From 23 February 1996 through 21 June 1996, defendant paid plaintiff an average weekly amount of $306.15. These payments, which totaled $5,184.55, were not due and payable when made.
18. As a result of the collision on 3 February 1996, plaintiff filed a claim for damages against an alleged third party tortfeasor. As of the date of the hearing before the undersigned, no judgment or settlement had been entered in that third party claim.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 3 February 1996, plaintiff was a regular employee of defendant. N.C. Gen. Stat. § 97-2(2); McGill v. Freight, 245 N.C. 469,96 S.E.2d 438 (1957); Brown v. Truck Lines, 229 N.C. 122;47 S.E.2d 711 (1948).
2. On that date, defendant had three or more regular employees, and therefore, was subject to and bound by the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(1).
3. On 3 February 1996, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. N.C. Gen. Stat. § 97-2(6).
4. Plaintiff is entitled to payment of temporary total disability compensation at the rate of $365.97 per week from 4 February 1996 and continuing until order of the Industrial Commission allowing defendant to cease payment of temporary total disability compensation. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to payment of all medical expenses incurred as a result of her injury on 3 February 1996. N.C. Gen. Stat. § 97-25.1.
6. Defendant is entitled to a credit for payments totaling $5,184.55 against the temporary total disability compensation due plaintiff. N.C. Gen. Stat. § 97-42.
7. Defendant shall have a lien against any amount obtained by plaintiff by settlement with, or judgment against, any third party as a result of her injury on 3 February 1996. N.C. Gen. Stat. § 97-10.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation at the rate of $365.97 per week from 4 February 1996 and continuing until order of the Industrial Commission allowing defendant to cease payment of temporary total disability compensation. This amount, to the extent that it has accrued, shall be paid in a lump sum, subject to the attorney's fee approved in paragraph 5.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of her injury on 3 February 1996.
3. Defendant shall receive a credit of $5,184.55 against the temporary total disability compensation due plaintiff in paragraph 1.
4. Defendant shall have a lien against any amount obtained by plaintiff by settlement with, or judgment against, any third party as a result of her injury on 3 February 1996.
5. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the lump sum due plaintiff in paragraph 1, after the credit due defendant, shall be deducted from that amount and paid directly to plaintiff's attorney. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
6. Defendant shall pay the costs.
FURTHER, IT IS ORDERED that this case is remanded to a Deputy Commissioner for a hearing regarding the imposition of a penalty pursuant to N.C. Gen. Stat. § 97-93 and § 97-94 for defendant's failure to keep in effect a policy of workers' compensation insurance.
This is the 12th day of December, 1997.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________________ PHILLIP A. HOLMES DEPUTY COMMISSIONER